IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **CLIPPER BULK SHIPPING LIMITED,** § § | | |
| Plaintiff, § § | | |
| vs. § § | C.A. No. 4:24-cv-_____ | |
| **MARINTER SHIPPING AGENCY, S.R.L.,** § § § | Admiralty Rule 9h | |
| Defendant. § § | | |

## VERIFIED COMPLAINT

Plaintiff, CLIPPER BULK SHIPPING LIMITED (hereinafter "Clipper Bulk" or "Plaintiff"), by and through undersigned counsel, files this Verified Complaint against Defendant MARINTER SHIPPING AGENCY S.R.L. (hereinafter "Marinter" or "Defendant"), and alleges as follows:

### JURISDICTION AND VENUE

1. Subject matter jurisdiction of this Honorable Court is based upon admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333 and is brought under the provision of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims. This case is also an admiralty and maritime claim within the meaning of rule 9(h) of the Federal Rules of Civil Procedure for claim of breach of a maritime contract.

2. Venue is proper in this District Court pursuant to 28 U.S.C. §1391(b), because the property belonging to the Defendant, *to wit*, cargo onboard the M/V M/V ORCINUS (IMO 9467952), which is or will be located within the Southern District of Texas during the pendency of this action.

1

## THE PARTIES

3. At all times material hereto, Plaintiff Clipper Bulk was and still is a business entity organized under the laws of a foreign country.

4. At all times material hereto, Defendant Marinter was and still is a foreign business entity organized under the laws of a foreign country.

## THE FACTS

5. Plaintiff, as owner of the M/V NORSE MOBILE, entered into a voyage charter party agreement dated December 7, 2023 for the carriage of 18,000 metric tons (+/- 5%) of wheat in bulk from Houston, Texas to Ortona, Italy. A copy of the Fixture Recap is attached as Exhibit 1.

6. The charter party agreement is a maritime contract.

7. The parties agreed to arbitration of disputes arising out of the maritime contract in London with English law to apply. *Id.*

8. Pursuant to the applicable charter party agreement, demurrage was agreed at USD 31,000 HDWTS BENDS (Despatch Half Demurrage on Working Time Saved Both Ends).

9. The Vessel arrived at Houston and timely tendered her notice of readiness to load the cargo on December 12, 2023.

10. Shortly thereafter on the same day, the Hansen-Mueller Grain Elevator was given a stop work order by the Port of Houston Fire Department due to a fire at the terminal.

11. The terminal issued a force majeure notice on December 12, 2023. The force majeure notice was passed on to Plaintiff on or about December 18, 2023.

12. On December 30, 2023, the Stop Work Order is lifted by the Houston Fire Department.

13. On December 31, 2023, Defendant claims that the silos nearest the fire had a "commercially objectionable foreign odor." That said, only 3 out of 650 silos were affected by the fire.

14. Any claim for force majeure is invalid, as only 3 of the 650 silos were affected by fire. As the Charterparty does not specify that only those three affected silos could be used, it follows that the unaffected 647 silos remained available.

15. As the fire affecting only three silos plainly did not constitute a force majeure event, laytime should run as normal under the charter party. In addition, Defendant failed to properly notify Plaintiff of the alleged force majeure event as required by Clause 53 of the charter party. The terminal / local agents provided Owners with a copy of a force majeure notice issued by the terminal. However, Defendant Charterers did not provide Owners with a force majeure notice under clause 53 of the Charterparty, which expressly calls for a force majeure notice issued by "*The Party whose performance ... is affected*" *i.e*. Charterers Defendant Marinter.

16. Notwithstanding the ability to perform and the subsequent lifting of the force majeure notice, Defendant failed, neglected, and/or refused to load the cargo in accordance with the parties' voyage charter party agreement.

17. Plaintiff accepted Defendant's repudiatory breach of the charter party.

18. As a result of the breach, Plaintiff has been caused to suffer damages of no less than **$1,228,260.29**.

19. Plaintiff's claim, which will be resolved on the merits in London Arbitration, is composed of the following amounts:

   a. $368,361.81 for demurrage incurred during the period of December 10-31, 2023;

b. $859,898.48 for losses suffered for loss of profits due to the breach of the charter party by Defendant (which is the net number following Plaintiff's mitigation and replacement charter entered into with an unrelated third party.

20. Despite being duly and properly made aware of the outstanding amount due and owing, Defendant has failed, neglected, and/or refused to remit payment totaling USD **$1,228,260.29** and/or provide security for same.

## APPLICATION FOR ATTACHMENT UNDER
## SUPPLEMENTAL ADMIRALTY RULE B

21. Plaintiff restates and re-alleges each and every allegation contained in the above foregoing Verified Complaint.

22. Plaintiff's claim for breach of the charter party agreements is a maritime claim.

23. This is an ancillary proceeding, brought to obtain jurisdiction over Defendant to obtain security for Plaintiff's claims in aid of a London arbitration proceeding which is pending.

24. Interest, costs, and attorney's fees are routinely awarded to the prevailing party under English Law and the procedural rules of London arbitration. Interest rates in U.K. arbitration matters are currently awarding 8.5% interest, compounded quarterly. *See, e.g.*, Interest Rates Tables - LMAA.

25. Plaintiff expects to recover the following amounts in arbitration from Defendant:

| | | |
|---|---|---|
| A. | Claim: | $1,228,260.29 |
| B. | Estimated Interest for Principal Claim: *2 years at 5.5 %, compounded quarterly* | $217,678.43 |
| C. | Estimated Arbitration Cost: | $100,000.00 |
| D. | Estimated Attorney's Fees: | $100,000.00 |
| | TOTAL: | $1,645,938.72 |

4

26. Therefore, Plaintiff's total claim for breach of the charter party, plus applicable interest, costs, and fees in the aggregate is estimated to be no less than **USD $1,645,938.72.**

27. Defendant is not present and cannot be found in the District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Law Claims. *See* Declaration of Briton Sparkman as Exhibit 2. Notwithstanding, the Defendant has or will have within the District tangible or intangible personal property including cargo, assets, accounts, freights, monies, charter hire, credits, effects, payments, goods or services, bills of lading, cargo and the like, which is subject to attachment as security for Plaintiff's claims.

28. Plaintiff has conducted an investigation and made maritime industry inquiries of Defendant's regular business activities due to the outstanding debts caused by the Defendant's breach of the charter party agreement. *See* Declaration of Morten Ligaard, as Exhibit 3.

29. Those investigations and industry inquiries have revealed that pursuant to a separate agreement, a vessel which is presently in the Port of Houston, *i.e.* the M/V ORCINUS (IMO 9467952) is loading a cargo of [description of the cargo] which, upon information and belief, is owned by Defendant. *Id.*

30. Accordingly, the M/V ORCINUS has on board tangible physical property of said Defendant, specifically cargo, as well as any other tangible and/or intangible property located onboard which is subject to attachment as security for Plaintiff's maritime claims.

31. It is standard in the market and in the applicable contracts for this type of trade for the cargo to be purchased on FOB ("freight on board") terms, meaning that the Defendant as the buyer of the cargo becomes the owner and title holder of the goods at the time that it passes the Vessel's rail at the time of loading.

32. Accordingly, Plaintiff has the good faith belief that the cargo onboard the M/V ORCINUS, is the asset of Defendant which are or will be located in this District.

**WHEREFORE PREMISES CONSIDERED**, Plaintiff prays as follows:

A.      That process in due form of law, according to the practice of this Honorable Court in matters of admiralty and maritime jurisdiction be issued against Defendant and said Defendant be cited to appear and answer the allegations of this Verified Complaint;

B.      That if Defendant cannot be found within this district, then all of its respective tangible or intangible property within this district, including physical property, or any property in which Defendant has an interest, such as debts, obligations, credits, effects, or property of any kind belonging to, claimed by, or held for the benefit of, the Defendant, be attached and seized pursuant to Supplemental Admiralty Rule B for Certain Admiralty and Maritime Claims;

C.      That if Defendant fails to appear and answer this matter once property has been attached and notice and service of same provided consistent with the Federal Rules of Civil Procedure and the Supplemental Admiralty Rules, that judgment be entered against the Defendant in the sum of **USD $1,645,938.72**, with applicable interest and costs, and the proceeds of the assets attached be applied in satisfaction thereof;

D.      That the Court grant Plaintiff such other and further relief as it deems just, equitable and proper.

Dated: September 12, 2024  
       Houston, Texas

Respectfully submitted,

CHALOS & CO, P.C.

By:   /s/ Briton P. Sparkman  
      George M. Chalos, Esq.  
      SDTX ID No.: 623727  
      Briton P. Sparkman, Esq.  
      SDTX ID No.: 1148116  
      7210 Tickner Street  
      Houston, Texas 77055  
      Telephone: (713) 574-9582  
      Facsimile: (866) 702-4577  
      Email:  gmc@chaloslaw.com  
                 bsparkman@chaloslaw.com